IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID L. WILLIAMS and CONNIE M. WILLIAMS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 8-1160 |
| ALLSTATE INSURANCE COMPANY, OCWEN SERVICING, LLC, FIDELITY MORTGAGE and AMERICAN SECURITY INSURANCE COMPANY | ) ) ) ) | |
| Defendants. | ) | |

AMBROSE, District Judge

**OPINION
and
ORDER OF COURT**

Pending before the Court is a Motion for Summary Judgment filed by Defendant, Allstate Insurance Company ("Allstate") seeking the entry of judgment in its favor on the Plaintiffs' breach of contract and bad faith claims. See Docket No. [43]. Plaintiffs filed a Brief in Opposition thereto. See Docket No. [51]. Allstate filed a Reply thereto. See Docket No. [52]. After a careful review of the submissions by the parties and for the reasons set forth below, the Motion is denied in part and granted in part.

A. Factual Background

This is a breach of an insurance contract and bad faith case. Plaintiffs, David and Connie Williams, owned residential property in Mercer County,

1

Pennsylvania. See Docket No. [50], ¶ 1. All parties agree that the Plaintiffs maintained a written homeowners' policy of insurance with Allstate in the amount of $60,000. Id, ¶ 2-3. However, the Williams contend that on May 22, 2006, they placed a phone call to the office of their Allstate agent, Henry Cocain, in an effort to increase this amount of coverage. Specifically, Mrs. Williams spoke to Mr. Cocain's secretary / office manager Betty Lunn, and explained that they wanted an increase in coverage to $100,000 in light of remodeling and a new appraisal. According to Mrs. Williams, Betty Lunn responded that she would take care of the paperwork and that a bill reflecting the increased premium would be sent in the mail. See Docket No. 45-3, p. 5.[1] On May 24, 2006, two days after this conversation, Mr. Cocain drove to the Plaintiffs' home to verify that remodeling had been done since the prior coverage had been in place. Because nobody was home when Mr. Cocain arrived, he was unable to conduct an inspection. An electrical fire destroyed the house on May 28, 2006.

Two days after the fire, Bill Conrad, an Allstate adjuster, met with the Plaintiffs and told them that the $60,000 would be covered under their written Policy. Plaintiffs disagreed with this amount and told Conrad that the limits had been raised to $100,000. See Docket No. [50], ¶10. Shortly after this meeting, Allstate began an investigation into the issue of coverage.

As part of the investigation, Conrad spoke with Mr. Williams on June 14,

---

[1] Obviously, Allstate disagrees with this version of events. Nevertheless, my task in resolving this Motion is to construe the facts in a light most favorable to the Williams.

2

2006. He requested copies of documents regarding the loan application, appraisals or any paperwork that applied to the loan / building to substantiate the increase in coverage and the Williams agreed to provide everything they could salvage from their home. Id., ¶¶ 34-35. Additionally, Conrad spoke to Betty Lunn, who explained her understanding of what Mrs. Williams had told her. Additionally, Tom Lacombe, an Allstate employee, secured Cocain's recollection of the Williams' May 22, 2006 request via a fax. Cocain wrote that the Plaintiffs had called and requested an increase in coverage to $100,000. Id., ¶ 41. The fax, however, contrasts with Mrs. Williams' contention that the remodeling had been completed. Instead, the fax indicates that the Williams were instructed to call Allstate once the remodeling was finished so that the property could be inspected. See Docket No. 45-9, Ex. 12.

After completing the investigation, Allstate determined that there was no agreement to increase the Williams' dwelling coverage from $60,000 to $100,000. See Docket No. [50], ¶ 43. On June 30, 2006 Allstate communicated its coverage decision to the Williams and issued a draft for the policy limits for dwelling coverage in the amount of $60,000 payable to David and Connie Williams and the mortgagee listed under the Policy. Id., ¶ 44. The Williams declined to accept the draft and demanded payment from Allstate in the amount of $100,000, which they believed to be the coverage amount under the orally modified policy.[2]

---

[2] It is undisputed, however, that the Plaintiffs have accepted the following payments regarding their claim: $6,508.80 for debris removal under the Dwelling Coverage Portion of their Policy; $4,511.30 under the Other Structures Portion of their Policy; and $6,774.22 for

3

B. <u>Standard of Review</u>

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. Once the moving party satisfies its burden, the

---

Additional Living Expenses Coverage under their Policy.

4

burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

C. Analysis

1. Breach of Contract

The Plaintiffs contend that the written insurance contract providing for dwelling coverage of $60,000 was orally modified as a result of the May 22, 2006 phone call. Because Allstate failed to tender this amount, the Plaintiffs charge them with a breach of contract. Allstate seeks the entry of summary judgment in its favor on this claim.

Allstate concedes that a written agreement can be modified by a subsequent oral agreement. See Docket No. [44], p. 15, *citing*, Pellegrene v. Lu, 403 Pa. 212, 215, 162 A.2d 298 (1961). See also, Fina v. Fina, 1999 Pa. Super. 201, 737 A.2d 760 (1999). Further, Allstate acknowledges that the modification may be shown by writings, by words, by conduct, or by any combination thereof. Id. See also Trombetta v. Raymond James Financial Services, Inc., 2006 Pa. Super. 229, 907 A.2d 550, 558 (2006) (stating that modification may be demonstrated by words, conduct or both). As Allstate insists, however, the modification must be based upon valid consideration and proven by clear, precise and convincing evidence. See Docket No. [44], p. 15, *citing*, The Trident Corporation v. Reliance Ins. Co., 350 Pa. Super. 142, 504 A.2d 285 (2007). See also Trombetta, 907 A.2d at 558.

5

Where the Plaintiffs fall short, Allstate insists, is with respect to evidence of an oral modification and evidence of consideration. I disagree. Construing the facts in a light most favorable to the Williams, as I am required to do at this juncture, reasonable finders of fact could resolve the claim in favor of the Williams.

For instance, Mrs. Williams testified that Betty Lunn told her that the request for an increase in coverage would be "taken care of" and that a bill reflecting the increased premium would be issued. According to Mrs. Williams, there was no mention that coverage was predicated upon an inspection. A jury could find such testimony credible. Further, Allstate does not dispute that Betty Lunn's statements can bind Henry Cocain and Allstate. See Royal Indem. Co. v. Deli by Foodarama Inc., Civ. No. 97-1267, 1999 WL 178543 (E.D. Pa. March 31, 1999), *citing*, Isaac v. Donegal & Conoy Mut. Fire Ins. Co., 308 Pa. 439, 162 A. 300 (1932) (establishing that where a duly authorized agent employs another to perform acts in relation to soliciting insurance, such acts can be binding).

Additionally, with respect to the issue of consideration, Mrs. Williams testified that she inquired of Betty Lunn the cost of the increased premium. She also explained that she and Mr. Williams were willing to pay whatever the increased cost was. A reasonable jury could find that the agreement to pay the increased premium when the bill was issued constituted sufficient consideration. See Strickler v. Huffine, 421 Pa. Super. 463, 468, 618 A.2d 430, 433 (1992) alloc. denied, 536 Pa. 630, 637 A.2d 290 (1993) (finding that the validity of an insurance

binder is not dependent upon the payment of a premium).

Thus, viewing the evidence in a light most favorable to the Plaintiffs, there is a genuine issue of material fact regarding whether the written Policy was orally modified. Consequently, the entry of summary judgment on the breach of contract claim is inappropriate. The Motion for Summary Judgment is denied in this regard.

2. Bad Faith

Plaintiffs assert that Allstate acted in bad faith in violation of 42 Pa. C.S.A. § 8371 in investigating and denying their claim. Section 8371 does not define the term "bad faith." Nevertheless, the Third Circuit has predicted that the Pennsylvania Supreme Court would define the term as did the Pennsylvania Superior Court in Terletsky v. Prudential Property & Cas. Ins. Co., 437 Pa. Super. 108, 649 A.2d 680 (1994). See Keefe v. Prudential Property & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000). In Terletsky, the court defined bad faith as follows:

> "Bad Faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Terletsky, 649 A.2d at 688, *quoting*, Black's Law Dictionary (6th ed. 1990) (citations omitted).

Thus, to succeed on a bad faith claim, a plaintiff must show that: (1) the insurer lacked a reasonable basis for denying benefits under the policy; and (2)

the insurer knew or recklessly disregarded its lack of a reasonable basis. See Terletsky, 649 A.2d at 688; and Klinger v. State Farm Mutual Auto Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997). A Plaintiff must establish bad faith by clear and convincing evidence. See Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 750 (3d Cir. 1994).

I agree with Allstate that the Plaintiffs cannot establish a *prima facie* claim of bad faith. In the Amended Complaint, the Plaintiffs cite two bases for the charge of bad faith: (1) failure to depose Mrs. Williams during the investigation regarding the substance of her conversation with Betty Lunn - so as to properly compare her credibility with that of Betty Lunn;[3] and (2) Allstate's "delay" in concluding the investigation. See Docket No. [14], ¶¶ 22, 23. In their Brief in Opposition, the Plaintiffs offer nothing further in terms of allegations, argument or evidence. Indeed, other than citing to "black letter law" governing bad faith claims, the Plaintiffs do nothing more than to say "[t]he plaintiffs' bad faith averments against Allstate fall squarely within the Terletsky standard... . See Docket No. [51], p. 6.

In contrast, Allstate has tendered clear and convincing evidence indicating that it had a reasonable basis for denying benefits under the policy and that it

---

[3] I reject Allstate's attempt to characterize the Plaintiffs' bad faith claim in this regard as one based upon conduct preceding the formation of the contract. See Docket No. [44], p. 20. Plaintiffs speak specifically of Allstate's actions following the submission of the claim for loss and its alleged failure to adequately investigate the details surrounding the alleged oral modification to the original written contract. Consequently, I find Allstate's reliance upon Toy v. Metropolitan Life Ins. Co., 593 Pa. 20, 928 A.2d 186, 200 (2007) to be unpersuasive.

reached its conclusion in a timely manner. In terms of delay, the record reflects that the fire occurred on May 28, 2006. See Docket No. [45], ¶ 1 and Docket No. [50], ¶ 1. The Plaintiffs contacted Allstate about the loss on Sunday, May 29, 2006. See Docket No. [45], ¶4 and Docket No. [50], ¶4. Approximately one month later, on June 30, 2006, Allstate had concluded its investigation and issued its coverage decision to the Plaintiffs. It issued a draft for the written policy limits for dwelling coverage in the amount of $60,000 made payable to the Williams. See Docket No. [45], ¶ 44 and Docket No. [50], ¶ 44. An investigation and offer of payment taking approximately one month does not, under these circumstances - where the insured and the agency disagree as to the Policy amount - present a triable issue of bad faith delay. See Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 579-80 (E.D. Pa. 1998), aff'd, 172 F.3d 860 (3d Cir. 1998) (rejecting a bad faith claim based upon delay where the insurance company resolved the claim within 13 months); Seagall v. Liberty Mut. Ins. Co., Civ. No. 99-6400, 2000 WL 1694026 at * 2 (E.D. Pa. Nov. 9, 2000) (finding a 6-11 month delay in resolving a claim insufficient to support a finding of bad faith); Williams v. Hartford Cas. Ins. Co., 83 F. Supp.2d 567, 572 (E.D. Pa. 2000) (finding a 15 month delay not rising to the level of bad faith).

The record also contains ample evidence supporting a conclusion that Allstate had a reasonable basis for denying benefits under the Policy. Having interviewed the homeowners, the agency, the mortgage company and its own investigators, Allstate concluded that an increase in coverage had not gone into

9

effect because the Plaintiffs were in the process of remodeling and the agency's standard procedure was to wait until remodeling was finished and to take pictures documenting the changes before revising a Policy. Henry Cocain, the agency owner, provided a statement that when Mrs. Williams called about increasing the coverage on the Policy, she was told that an inspection would have to be done before a new policy would be issued. See Docket No. [45-9], Ex. 12. Cocain stated that "[a]t that time they were told that we would have to reinspect. They were called back to set up an appointment and at that time the remodeling was not done." Id. Cocain explained that "[a]s per our procedure for increasing a current policy, we would have to come and do the reinspection once the remodeling was finished." Id. The agency also provided documentation received from Fidelity Mortgage which specifically provided that no increase in coverage was required. Id.

Allstate also relied upon Betty Lunn's statements. Lunn had been Cocain's secretary / office manager for approximately 37 years. She testified that during her conversation with Mrs. Williams regarding the increase in insurance coverage, Mrs. Williams explained that they were intending to remodel the house. See Docket No. [45-4], Ex. 7. Lunn informed Mrs. Williams that an increase would not go into effect until some remodeling had been done and the property had been inspected. Id.

Allstate also considered statements provided by its adjuster Bill Conrad. Conrad testified that it was his understanding from speaking with the Williams

during the investigation that they were in the process of remodeling when the fire occurred. See Docket No. [45-5], Ex. 8.

The Plaintiffs have provided absolutely no evidence suggesting that it was unreasonable for Allstate to rely on this evidence in concluding that the coverage had not been raised from $60,000 to $100,000. Indeed, the Plaintiffs offer nothing more than the statement that Allstate demonstrated bad faith by failing to take Mrs. Williams' deposition in order to assess her credibility as compared to Betty Lunn's. I do not think this allegation, without more, and in light of all the evidence proffered by Allstate, establishes a prima facie case of bad faith. The Motion for Summary Judgment is granted in this respect.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID L. WILLIAMS and CONNIE M. WILLIAMS, )
)
)
Plaintiffs, )
)
vs. ) Civil Action No. 8-1160
)
ALLSTATE INSURANCE COMPANY, OCWEN )
SERVICING, LLC, FIDELITY MORTGAGE and )
AMERICAN SECURITY INSURANCE COMPANY )
)
Defendants. )

AMBROSE, District Judge

## ORDER OF COURT

AND NOW, this 17th day of May, 2010, after careful consideration and for the reasons set forth in the accompanying Opinion, the Defendant Allstate Insurance Company's Motion for Summary Judgment (Docket No. [43]) is GRANTED IN PART and DENIED IN PART. It is granted insofar as summary judgment is entered in favor of Allstate and against the Williams with respect to the claim for bad faith. The Motion is denied insofar as Allstate sought the entry of summary judgment in its favor and against the Williams with respect to the claim for breach of contract.

A Pre-Trial and Settlement Conference is set for May 26, 2010 at 2:00 p.m.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge